IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JUAN PABLO CERVANTES, | § | |
| | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | Civil Action No. H-08-1864 |
| | § | |
| RICK THALER, | § | |
| | § | |
| *Respondent*. | § | |

## MEMORANDUM OPINION AND ORDER

Petitioner, a state inmate represented by counsel, seeks habeas corpus relief under 28 U.S.C. § 2254 challenging his convictions for aggravated assault with a deadly weapon. Respondent filed a motion for summary judgment (Docket Entry No. 12), to which petitioner responded (Docket Entry No. 18).

Based on consideration of the pleadings, the motion and response, the record, and the applicable law, the Court **GRANTS IN PART** and **DENIES IN PART** the motion for summary judgment and **ORDERS** as follows.

## I.  PROCEDURAL BACKGROUND

Petitioner was convicted of four counts of aggravated assault in February of 2005, and sentenced to two eighteen-year and two ten-year sentences.  The convictions were affirmed on appeal.  *Cervantes v. State*, No. 14-05-00203-CR (Tex. App. – Houston [14th Dist.] 2006, pet. ref'd) (not designated for publication).  The Texas Court of Criminal Appeals refused

discretionary review and denied petitioner's applications for state habeas relief.  *Ex parte Cervantes*, Applications No. 69,310-01, -02, -03, -04, at covers.[1]  The instant federal petition was filed on June 10, 2008.

Petitioner raises the following grounds for federal habeas relief:

1.      ineffective assistance of trial counsel in failing to

     a.      investigate petitioner's prior criminal history; and

     b.      object to extraneous offense evidence during trial and closing argument.

2.      prosecutorial misconduct.

Respondent argues that these grounds fail as a matter of law.

## II.  THE APPLICABLE LEGAL STANDARDS

This petition is governed by applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  28 U.S.C. § 2254.  Under the AEDPA, federal relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); 28 U.S.C. §§ 2254(d)(1), (2).  A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a

---

[1]All references to the state habeas record will be to Application No. 69,310-02 unless otherwise stated.  The cited portions of the record are the same for all four applications.

set of facts that are materially indistinguishable from such a decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7-8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id.* at 411.

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 330-31.

### III.   INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is

measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984).  To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance.  *Id.* at 687.  The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim.  *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness.  *Strickland*, 466 U.S. at 688.  In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy.  *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.  *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992).  However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.  *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694.  To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.

4

*Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).  In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled.  *Id*.

The overarching complaint lodged by petitioner in the instant proceeding is that trial counsel was unaware of petitioner's prior criminal history and thus failed to object when the improper evidence was elicited at trial.  To that end, petitioner asserts the following two claims of ineffective assistance of trial counsel.

A.    Failure to Investigate Prior Criminal History

Petitioner complains that trial counsel failed to pursue pretrial discovery regarding the State's intended use of petitioner's criminal history, or discuss petitioner's criminal history with him prior to trial.  (Docket Entry No. 1, pp. 14-15.)  He contends that trial counsel's complete failure to undertake any pretrial discovery constituted deficient performance under *Strickand*.

In denying this habeas ground, the trial court made the following relevant findings:

1.    In order to prevail on a claim of ineffective assistance of counsel, the defendant must satisfy the two-prong test set forth in *Strickand*[.] Specifically, he must show that his attorney's performance was deficient and that he was prejudiced by his attorney's deficient performance.  In order to demonstrate prejudice, the defendant must show that there is a reasonable possibility (sic) that, but for counsel's unprofessional errors, the result of the proceeding would have been different. There is a strong presumption that defense counsel's conduct falls within the wide range of reasonable professional assistance.

2.    Applicant fails to show that trial counsel's performance was deficient.

3.      The record reflects that trial counsel's advice was well within the range of competence demanded of attorneys in criminal cases.

4.      Applicant is not entitled to relief because he did not receive ineffective assistance of counsel.

*Ex parte Cervantes*, p. 411 (citations and quotations omitted).  The Texas Court of Criminal Appeals relied on these findings in denying habeas relief.

During the defense's case-in-chief, the State cross-examined both petitioner and his girlfriend to elicit testimony regarding petitioner's two prior marijuana-related convictions for which he was on probation, a pending charge for driving while intoxicated, and a motion to revoke his probation based on the instant charges.

As posited by respondent, the record does not clearly evince that trial counsel was unaware of petitioner's criminal history.  For instance, the following trial exchange between the State and petitioner's girlfriend shows that trial counsel had *some* degree of awareness of petitioner's criminal record:

STATE:          Did [petitioner] have any legal fees, fines, so forth, to pay?

WITNESS:     He was on probation.  He had a $40 [per] month probation fee.

STATE:          He also had a DWI a couple months before that.[2]

DEFENSE COUNSEL:      Objection, your Honor.

---

[2] The state court on direct appeal found that, "Although the record reflects this statement as a question by the State, it appears likely to have been a continuation of the previous answer by the witness."  *Cervantes*, at *3.  Petitioner makes no argument to the contrary, and this Court finds no basis in the record for disagreeing with the state court's construction.

> THE COURT:        Yes, sir.
>
> DEFENSE COUNSEL:        I object, your Honor.  This is – he is eliciting evidence about past crimes, criminal charges, that is not – that has not been finalized yet.

R.R., Vol. 2, pp. 145-146.  The trial court sustained trial counsel's objection.

By arguing that trial counsel failed to file any motions for discovery, petitioner sidesteps counsel's ability to have garnered the information from sources other than the prosecutor.  For instance, petitioner stated in his state habeas affidavit that,

> It was on February 8, 2005 [the day before trial] that [counsel] finally sat down to ask me for information related to my case.  At this time, [he] seemed to be worried.  Ten months I sat in the cou[n]ty jail and now, the day of trial he wanted to take a few minits (sic) to write down what I had tried to tell him all along.  This man waited till the day of trial to gather information I was trying to give him for months before, and was not able to get all the facts before he had to leave.

*Ex parte Cervantes*, p. 286.  Petitioner did not state in his affidavit that he and counsel did not discuss his prior criminal history, nor does the record show that he did not inform counsel of his criminal past in any of the letters he acknowledged sending counsel from jail.  *Id.*, p. 284.  Further, neither petitioner nor the record shows that trial counsel did not obtain the necessary information from petitioner's original court-appointed counsel, after he was retained to replace appointed counsel.  Nor does petitioner negate trial counsel's ability to have undertaken his own investigation of petitioner's criminal record.  Although petitioner baldly urges that trial counsel's "failure to investigate his prior criminal history before trial constituted deficient performance under *Strickland*," the record shows only that trial counsel

failed to pursue discovery motions.   The record before this Court does not support petitioner's claim that trial counsel undertook no investigation, or was otherwise unaware, of petitioner's criminal history.

The state court denied relief on this claim.   Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment on this claim.

  B.  <u>Failure to Object to Extraneous Offense Evidence</u>

Petitioner further complains that trial counsel failed to object to the State's improper use of petitioner's extraneous unadjudicated offenses during cross-examination of petitioner and his girlfriend, and at closing argument.   (Docket Entry No. 1, p. 16.)

In denying this claim on collateral review, the trial court made the following relevant findings:

> 2.  Applicant fails to show that trial counsel's performance was deficient.

> 3.  The record reflects that trial counsel's advice was well within the range of competence demanded of attorneys in criminal cases.

> 4.  Applicant is not entitled to relief because he did not receive ineffective assistance of counsel.

> 5.  When a party produces evidence tending to create a false impression of his law-abiding behavior, he opens the door on his otherwise irrelevant past criminal history, and opposing counsel may introduce evidence tending to rebut the false impression.

6.      This rule is not limited to final convictions.

7.      By confronting Applicant with his prior criminal history, the prosecutor
        was simply trying to rebut the false impression created by Applicant as
        to his law-abiding nature.

*Ex parte Cervantes*, pp. 411-412 (citations and quotations omitted).  The Texas Court of

Criminal Appeals relied on these findings in denying habeas relief.

Petitioner complains of the following cross-examination exchange between his alibi

witness (his girlfriend) and the State during the defense's case-in-chief:

STATE:      Tell the jury why [petitioner] would need money in December.

WITNESS:   I guess like normal people, you need money to eat, to live, so –
           and we were having vehicle problems.

STATE:      Did he have any legal fees, fines, so forth, to pay?

WITNESS:   He was on probation.  He had a $40 [per] month probation fee.

STATE:      He also had a DWI a couple months before that.[3]

DEFENSE COUNSEL:      Objection, your Honor.

THE COURT:      Yes, sir.

DEFENSE COUNSEL:      I object, your Honor.  This is – he is eliciting
                      evidence about past crimes, criminal charges, that
                      is not – that has not been finalized yet.

THE COURT:      Approach the bench.  I couldn't understand the objection.

        (Brief discussion held off the record before the bench.)

---

[3]Again, this appears to be a statement made by the witness, not the State.

9

THE COURT:        I'll sustain the objection.

R.R., Vol. 2, pp. 145-146.  The trial judge did not instruct the jury to disregard the evidence, and trial counsel did not request such an instruction or move for mistrial.  The State conceded in its brief on direct appeal that the prosecution's question was improper, but argued that, in light of the entire record, no ineffective assistance was shown.  The state court of appeals agreed, and found that, "In this case, appellant's brief makes no attempt to show or explain how there is a reasonable probability that, but for counsel's allegedly deficient actions or omissions, the result of the proceeding would have been different."  *Cervantes*, at *2.

Although the State's question regarding legal fees and fines may have been improper, the extraneous offense evidence was subsequently re-introduced through cross-examination of petitioner himself during guilt-innocence:

STATE:        Talk about credibility.  You're currently on probation for what?

PETITIONER:        Delivery of marijuana.  I was 17 years of age at the time.

STATE:        In 2000, August 20, 2000, you got put on probation for delivery of marijuana, and you're still on it today, right?

PETITIONER:        Yes.  I am.

STATE:        In fact, you got put on another probation for delivery of marijuana at this time?

PETITIONER:        When?  At what time?  It was two cases ran together.

STATE:        Two times you sold marijuana or delivered marijuana to somebody?

10

PETITIONER:      When I was 17 years old.

STATE:     What difference does that make?

PETITIONER:      I'm 23 now.  I've come a long way.  I've actually made something of myself.  I've bought my house, property, trucks.

STATE:     Fair enough.  So the reason you got arrested for D.W.I. 2 months before this happened was why?

TRIAL COUNSEL: Objection.

STATE:     He said he was a responsible citizen.  I ought to be able to ask him the question.

THE COURT:     What is the basis of your objection?

TRIAL COUNSEL: Same as we discussed before on the pending issues, pending criminal –

THE COURT:     It's cross-examination of the defendant.  He may ask the question.

*   *   *   *

STATE:     The case is still pending?

PETITIONER:      Yes, sir.

R.R., Vol. 2, pp. 186-88.  As shown, trial counsel did voice an objection, albeit late, but the trial court overruled the objection, holding that it was permissible cross-examination.

Petitioner next complains that trial counsel failed to object to the following exchange during the continuation of his cross-examination:

STATE:  You, of course, if this jury convicts you of this, you're going to be revoked in – is it Burleson County that you got your delivery of marijuana?

PETITIONER:  Yes, sir.

STATE:  If you get convicted by this jury, they're going to revoke you in Burleson County, and you're looking at 10 years over there also?

PETITIONER:  I'm not sure.

STATE:  Why wouldn't you remember how much time you're looking at for delivery on a controlled substance?

PETITIONER:  I don't have no delivery of a controlled substance.

STATE:  Delivery of marijuana.

PETITIONER:  Why wouldn't I remember?

STATE:  Yeah.

PETITIONER:  I've never given them any trouble.  I've stayed out of trouble until now, the age of 23, until these allegations have come up.  I have no reason to worry about my sentence.  If I was in and out of there running the streets, being a thug or causing harm to society –

\*  \*  \*  \*

STATE:  Out of clear blue, you don't know what you're looking at in Burleson County.  That's what you want to give the jury panel?

PETITIONER:  I know there's a sentencing range.

STATE:  Tell this jury why a man who's on probation now [for] delivering marijuana is out here with aggravated assault would never ask what he's looking at in Burleson County?

12

PETITIONER:     Because I did not commit this crime.  If I'm clear here, I'll clear there; and they will act like nothing happened.

STATE:     If the jury convicts you over here, they're going to revoke you over there?

PETITIONER:     Yes, sir.

STATE:     That's the reason you don't want to be convicted here, right?

PETITIONER:     No.  I do not want to be convicted here, because I did not do this.

STATE:     I understand.

PETITIONER:     That's not the reason behind it.

*   *   *   *

STATE:     Tell the jury how somebody could be that unconcerned about another county that he doesn't know what he's looking at.  Tell the jury how in the world –

PETITIONER:     Because I know the truth.  I know my heart, and I know where I stand.  That's why I brought it in front of you jurors today for you to see and for you to be the judge of all this.  And that's why I stand where I stand and see the things the way I do.

*Id.*, Vol. 2, pp. 200-204.  Petitioner complains that this damaging evidence was emphasized

during the State's closing argument, again without objection by trial counsel:

[The eyewitness's]  background is consistent with their testimony in the sense of how it has emotionally affected them and how they're scared now to go back to the house.  They were positive that the defendant was the man who did it.  This wasn't somebody that saw somebody for a brief few seconds.  He had

13

an aggravated – I think one of the witnesses said he had an aggravated robbery.  All these people knew who the defendant was.

*Id.*, Vol. 3, pp. 12-13.

> Now, we know about the defendant a little bit.  He's been on probation twice for delivery of marijuana.  He is currently on probation for ten years for delivery of marijuana.  He is looking at a motion to revoke his probation, and he's going to go to the penitentiary if you find him guilty of this.

*Id.*, p. 15.

> The defendant has such a cavalier approach.  It's his approach you look at. Why in the world would I care?  That's why I asked, 'How many years are you looking at in Burleson County?'  'I don't know.  What difference does it make?'  If I was in a courtroom looking at 20 years, I would damn well know how many years I'm looking at in Burleson County.  He, of course, doesn't. I even asked his attorney's name.  He doesn't know if he even gave it to him or not.  Are those something juries look at in determining credibility of the witnesses?  We talked about the marijuana.  'I was young.  I changed my life. I was young back then.  I've done better.'  What about the DWI?  'That was wrong.  I wasn't drinking.  Could have been the medicine.'

*Id.*, p. 16.

> People do despicable acts because of their own rationalization.  Why does somebody sell marijuana?  Really.  Why?  Multiple times.  Why does he do it? Why does somebody drive while intoxicated?   Why does somebody rob somebody?  There's always a reason.

*Id.*, pp. 21-22.

> I submit to you that the defendant is guilty on this, and I ask you to go back and find him guilty and come back, and we'll hear the punishment phase.  I think . . . that you already know about the defendant's criminal background, but before you do that, there's a couple things I want to go over on this, if we can do that.

*Id.*, p. 26.

14

Petitioner asserts that, under Texas Rules of Evidence Rule 609, a witness can be impeached only with a final conviction, and that a deferred adjudication (regarding the marijuana convictions) is not a final conviction under Texas law.  He likewise argues that pending charges are inadmissible for impeachment purposes, unless the charges result in a felony conviction or for an offense involving moral turpitude.  Thus, underlying petitioner's ineffectiveness claim is his argument that the evidence of his criminal history was inadmissible and that, had counsel objected or timely objected, the objection would have been sustained.

The state habeas courts did not support petitioner's underlying argument that the evidence was inadmissible.  As found by the trial court on collateral review,

> 5.     When a party produces evidence tending to create a false impression of his law-abiding behavior, he opens the door on his otherwise irrelevant past criminal history, and opposing counsel may introduce evidence tending to rebut the false impression.
>
> 6.     This rule is not limited to final convictions.
>
> 7.     By confronting Applicant with his prior criminal history, the prosecutor was simply trying to rebut the false impression created by Applicant as to his law-abiding nature.

*Ex parte Cervantes*, pp. 411-412 (citations and quotations omitted).  The Texas Court of Criminal Appeals relied on these findings in denying habeas relief.

Although petitioner contends here that the complained-of evidence was inadmissible under state law, such that counsel's failure to object constituted ineffective assistance, the

state court found the evidence admissible to rebut the false impression of law-abiding behavior offered by petitioner.   While it is not for this Court to second-guess the admissibility of evidence under state evidentiary rules, this Court can, and does, question the trial court's underlying finding that petitioner had created a false impression as to his law-abiding nature, thus allowing the State to use the evidence to rebut that impression.  A careful review of the trial testimony shows that neither petitioner nor his girlfriend had testified to petitioner's law-abiding nature prior to the State's injecting or eliciting evidence of his criminal history.  While the State points to petitioner's testimony that he had a stable income as established by his income tax returns, the record as a whole shows that petitioner's purpose in presenting this evidence was not to create an impression of being a law-abiding citizen, but to negate his need for money as a motive for the offense.  Indeed, the State made its own effort to show that petitioner needed additional money and was in a financial bind at the time of the offense:

> STATE: Did the defendant ever tell you or talk to you about needing money in December of 2003?  Did he ever talk to you about that?
>
> WITNESS: He said he was in a bind for money.
>
> *   *   *   *
>
> He said he was in a bind for money about fixing his truck.

R.R., Vol. 2, p. 155.

> Q: You know about his background about why he would need money, wouldn't you?

16

A:      Yes, sir.

Q:      Tell the jury why he would need money in December.

A:      I guess like normal people, you need money to eat, to live, so – and we
        were having vehicle problems.

*Id.*, p. 145.

The state court's finding that, "By confronting Applicant with his prior criminal history, the prosecutor was simply trying to rebut the false impression created by Applicant as to his law-abiding nature," is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003). The State elicited the extraneous offense evidence *before* petitioner made any statements relevant to a law-abiding nature, and trial counsel's ensuing objection was untimely. R.R., Vol. 2, pp. 186-88. Accordingly, reasonable trial counsel would have objected timely to the State's use of the evidence during the guilt-innocence phase of trial and during closing argument.

This, however, is not the end of the inquiry. Trial counsel would not be ineffective if his decision not to object were based on a reasonable trial strategy. *See Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993). The record before this Court is wholly lacking any evidence as to whether trial counsel's actions in the instant case were, or were not, the result of a reasonable trial strategy. Although the State argues that it was petitioner's trial strategy to disclose to the jury all of his prior offenses, the record forecloses this argument; petitioner did not voluntarily disclose his criminal history during his direct testimony. Accordingly, the

record is not fully developed regarding this issue of ineffective assistance, and the Court cannot reasonably determine the merits of petitioner's claim on the record before it.

Respondent's motion for summary judgment is **DENIED** as to this issue of ineffective assistance regarding the extraneous offense evidence. Under Rule 7 of the Rules Governing Section 2254 Cases in the United States District Courts, which allows expansion of the federal habeas record, the Court **ORDERS** respondent to obtain and file with the Court, within forty-five days from date of this order, an affidavit from trial counsel, Chukwu U. Oko, SBT # 24007771, regarding the allegations raised by petitioner under this issue and his failure to object to the extraneous offense evidence during guilt-innocence and the State's closing argument. Within forty-five days after filing the affidavit, respondent shall file an amended motion for summary judgment on this issue. Petitioner shall file a response to the amended motion within thirty days after the date of service of the motion as it appears on the motion's certificate of service.

## IV.   PROSECUTORIAL MISCONDUCT

Petitioner complains that the prosecutor's use and continued use of the improper extraneous offense evidence during cross-examination and closing argument constituted prosecutorial misconduct. Prosecutorial misconduct, in context of a habeas proceeding, requires a showing that the State's actions "so infected the [trial] with unfairness as to make the resulting [conviction] a denial of due process." *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000). That is, the petitioner must "demonstrate either persistent and pronounced

misconduct or that the evidence was so insubstantial that (in probability) but for the remarks no conviction would have occurred." *Felde v. Blackburn*, 795 F.2d 400, 403 (5th Cir. 1986). To constitute a due process violation, the prosecutorial misconduct must be of "sufficient significance to result in the denial of the defendant's right to a fair trial." *Greer v. Miller*, 483 U.S. 756, 765 (1987).

The State's cross-examination of petitioner's girlfriend, which resulted in testimony establishing that petitioner was on probation and had a DWI charge, affords petitioner no relief under this issue. Although trial counsel's objection to the evidence was sustained, he did not ask the trial court to instruct the jury to disregard the evidence or move for a mistrial. This failure formed the basis for the state appellate court's denial of petitioner's prosecutorial misconduct claim:

> To preserve a complaint on jury argument for appellate review, a defendant must pursue his objection, if sustained, to an adverse ruling, such as on a request for limiting instruction or mistrial. [FN. Although appellant contends that 'obviously harmful' argument by the prosecution requires reversal, each of the cases he cites in support of this contention involves a complaint that was preserved by an adverse ruling]. Because appellant failed to do so in this case, his seventh issue presents nothing for our review.

*Cervantes*, at *2-3 (citations omitted).

Even assuming prosecutorial misconduct were shown in this single incident, petitioner was not harmed by that incident, as the same evidence was subsequently and more extensively elicited during his cross-examination by the State. Although the prosecution's initial question may have been improper (R.R., Vol. 2, p. 186), it went unchallenged by trial

19

counsel and was eventually held as proper cross-examination by the trial judge. *Id.* Trial counsel further failed to object to use of the evidence during closing argument. Accordingly, this Court declines to find that prosecutorial misconduct violated petitioner's due process protections and denied him a fair trial under the circumstances.[4]  Respondent is entitled to summary judgment dismissing this claim.

## V.   CONCLUSION

The Court **ORDERS** as follows:

1.    Respondent's motion for summary judgment (Docket Entry No. 12) is **GRANTED** as to petitioner's claims regarding counsel's failure to investigate his criminal record and for prosecutorial misconduct.

2.    Respondent's motion for summary judgment (Docket Entry No. 12) is **DENIED** as to petitioner's claims regarding counsel's failure to object to the extraneous offense evidence during guilt-innocence and closing argument.

3.    Respondent is **ORDERED** to obtain and file with the Court within forty-five days from this order an affidavit of trial counsel, Chukwu U. Oko, SBT # 24007771, regarding his alleged ineffectiveness in failing to object to the extraneous offense evidence during guilt-innocence and closing argument.

4.    Respondent is **ORDERED** to file an amended motion for summary judgment within forty-five days after filing trial counsel's affidavit, addressing trial counsel's alleged ineffectiveness in failing to object to the extraneous offense evidence.  Petitioner is **ORDERED** to file a response to the amended motion for summary judgment within thirty days thereafter.

---

[4]This ruling is not to be read as approving or condoning the prosecutor's cross-examination tactics.  To the contrary, his use of the extraneous offense evidence was wholly inappropriate and violated state rules of evidence, as conceded by the State on direct appeal.

This is an **INTERLOCUTORY** order.

The Clerk will provide a copy of this order to the parties.

Signed at Houston, Texas, on this the 3rd day of March, 2010.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE