IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JUAN PABLO CERVANTES, § § *Petitioner*, § § v. § § RICK THALER, § § *Respondent*. § | Civil Action No. H-08-1864 |

**SUPPLEMENTAL MEMORANDUM OPINION ON REMAND**

The Fifth Circuit Court of Appeals remanded this section 2254 lawsuit to this Court "for the limited purpose that the district court enter reasons for denying Cervantes's prosecutorial misconduct claim to the extent he challenges the prosecutor's cross-examination of Cervantes and the prosecutor's closing argument." *Cervantes v. Thaler*, No. 11-20165 (5th Cir. 2011). Petitioner complains that the Fort Bend County prosecutor's repeated references to his two deferred adjudication/probation offenses and a misdemeanor D.W.I. charge constituted prosecutorial misconduct entitling him to habeas relief.

Petitioner states in his habeas petition that, on August 28, 2000, he was placed on two years deferred adjudication in Burleson County, Texas, for six felony counts of delivery of marijuana. He reports that he successfully discharged the deferred adjudication prior to trial in the instant case. Petitioner also states that, on August 28, 2000, he was placed on ten years deferred adjudication/probation in Burleson County for the felony offense of delivery of marijuana and that, after he was charged with the four instant aggravated assault charges, he

was additionally charged with a D.W.I offense in Brazos County. The latter charge was disposed of following petitioner's conviction in the instant case. (Docket Entry No. 1, p. 17.)

During the defense's case in chief, the State cross-examined petitioner regarding these other offenses. Petitioner asserts that the cross-examination constituted prosecutorial misconduct because evidence of the other offenses was inadmissible. Petitioner argues that the following cross-examination exchanges constituted prosecutorial misconduct:

| | |
|---|---|
| THE STATE: | Talk about credibility. You're currently on probation for what? |
| PETITIONER: | Delivery of marijuana. I was 17 years of age at the time. |
| THE STATE: | In 2000, August 20, 2000, you got put on 10 years' probation for delivering marijuana, and you're still on it today, right? |
| PETITIONER: | Yes. I am. |
| THE STATE: | In fact, you got put on another probation for also delivery [sic] of marijuana at this time? |
| PETITIONER: | When? At that time? It was two cases ran together. |
| THE STATE: | Two times you sold marijuana or delivered marijuana to somebody? |
| PETITIONER: | When I was 17 years old. |
| THE STATE: | What difference does that make? |
| PETITIONER: | I'm 23 now. I've come a long way. I've actually made something of myself. I've bought my house, property, trucks. |

2

| | |
|---|---|
| THE STATE: | Fair enough. So the reason you got arrested for D.W.I. 2 months before this happened was why? |
| DEFENSE COUNSEL: | Objection. |
| THE STATE: | He said he was a responsible citizen. I ought to be able to ask him the question. |
| THE COURT: | What is the basis of your objection? |
| DEFENSE COUNSEL: | Same as we discussed before on the pending issues, pending criminal – |
| THE COURT: | It's cross-examination of the defendant. He may ask the question. |

\* \* \* \*

| | |
|---|---|
| THE STATE: | The case is still pending? |
| PETITIONER: | Yes, sir. |

R.R., Vol. 2, pp. 186–88.

| | |
|---|---|
| THE STATE: | You – of course, if this jury convicts you of this, you're going to be revoked in – is it Burleson County that you got your delivery of marijuana? |
| PETITIONER: | Yes, sir. |
| THE STATE: | If you get convicted by this jury, they're going to revoke you in Burleson County, and you're looking at 10 years over there also? |
| PETITIONER: | I'm not sure. |
| THE STATE: | Why wouldn't you remember how much time you're looking at for delivery of a controlled substance? |
| PETITIONER: | I don't have no delivery of a controlled substance. |

3

| | |
|---|---|
| THE STATE: | Delivery of marijuana. |
| PETITIONER: | Why wouldn't I remember? |
| THE STATE: | Yeah. |
| PETITIONER: | I've never given them any trouble. I've stayed out of trouble until now, the age of 23, until these allegations have come up. I have no reason to worry about my sentence. If I was in and out of there running the streets, being a thug or causing any harm to society – |
| THE STATE: | Is that the answer you want to give the jury why you can't remember what you're looking at in Burleson County? Weren't you recently in their jail? |
| PETITIONER: | Excuse me? |
| THE STATE: | Weren't you recently in Burleson County Jail? |
| PETITIONER: | Yes, sir. |
| THE STATE: | You must have had an attorney represent you there. |
| PETITIONER: | Yes. |
| THE STATE: | He must have told you that you're looking at imprisonment? |
| PETITIONER: | No, sir. |
| THE STATE: | He never mentioned the ten years? |
| PETITIONER: | No, sir. |
| THE STATE: | Out of clear blue, you don't know what you're looking at in Burleson County. Is that what you want to give this jury panel? |
| PETITIONER: | I know there's a sentencing range. |

4

| | |
|---|---|
| THE STATE: | Tell this jury why a man who's on probation now of delivering marijuana is out here with aggravated assault would never ask what he's looking at in Burleson County? |
| PETITIONER: | Because I did not commit this crime. If I'm clear here, I'll clear there; and they will act like nothing happened. |
| THE STATE: | If this jury convicts you over here, they're going to revoke you over there? |
| PETITIONER: | Yes, sir. |
| THE STATE: | That's the reason you don't want to be convicted here, right? |
| PETITIONER: | No. I do not want to be convicted here, because I did not do this. |
| THE STATE: | I understand. |
| PETITIONER: | That's not the reason behind it. |
| THE STATE: | Who's your attorney representing you in Burleson County? |
| PETITIONER: | What does that have to do with this? |
| THE STATE: | Sir, you can't ask questions. You can only answer. |
| PETITIONER: | I'm sorry. I don't know. This is my first time ever being in something like this. |
| THE STATE: | That's not true, either. You've been in trouble before? |
| PETITIONER: | I've never been in trial. |
| THE STATE: | Who's your attorney in the other county? |

| | |
|---|---|
| PETITIONER: | I recently – he was my attorney for the DWI. He's David Merit. |
| THE STATE: | Did you hire him after you got arrested for the DWI? |
| PETITIONER: | Yes, sir. |
| THE STATE: | There was some money you had to pay him, right? |
| PETITIONER: | Yes. |
| THE STATE: | Were you behind on any fees or fines or anything? |
| PETITIONER: | No. |
| THE STATE: | Okay. One last time. Do you want to tell the jury something different today before you get off the stand, or do you want to stick with the times [sic]? |
| PETITIONER: | No, I do not want to tell them anything different other than the truth that I've already spoken to you about. |
| THE STATE: | Do you want to tell me anything different about not knowing what you're looking at in Burleson County? |
| PETITIONER: | Now that you've mentioned the way of being revoked, yes, I do know what I'm facing in Burleson County. |
| THE STATE: | What is it? |
| PETITIONER: | I guess it's ten years. |
| THE STATE: | It's because I told you. |
| PETITIONER: | To be truthful, yes, because I've never really talked about the sentencing phase. |
| THE STATE: | Tell this jury how somebody could be that unconcerned about another county that he doesn't know what he's looking at. Tell the jury how in the world – |

6

> PETITIONER:   Because I know the truth.

>    \*   \*   \*   \*

> THE STATE:   You're not concerned about Burleson County, and then you come in here before the jury and give testimony, don't practice it at all. You're not concerned about your girlfriend, that you looked at their statements yesterday?

> PETITIONER:   I am concerned about this case, but I don't see any reason to practice anything.

*Id.*, pp. 200–205.

Petitioner complains that this extraneous offense evidence was again emphasized during the State's closing argument at the guilt-innocence phase of trial:

> [The complainants'] background is consistent with their testimony in the sense of how it has emotionally affected them and how they're scared now to go back to the house. They were positive that the defendant was the man who did it. This wasn't somebody that saw somebody for a brief few seconds. He had an aggravated – I think one of the witnesses said he had an aggravated robbery. All these people knew who the defendant was.

*Id.*, Vol. 3, pp. 12–13.

> Now, we know about the defendant a little bit. He's been on probation twice for delivery of marijuana. He is currently on probation for ten years for delivery of marijuana. He is looking at a motion to revoke his probation, and he's going to go to the penitentiary if you find him guilty of this.

*Id.*, p. 15.

> The defendant has such a cavalier approach. It's his approach you look at. Why in the world would I care? That's why I asked, 'How many years are you looking at in Burleson County?' 'I don't know. What difference does it make?' If I was in a courtroom looking at 20 years, I would damn well know how many years I'm looking at in Burleson County. He, of course, doesn't. I even asked his attorney's name. He doesn't know if he even gave it to him

> or not. Are those something juries look at in determining credibility of the witnesses? We talked about the marijuana. 'I was young. I changed my life. I was young back then. I've done better.' What about the DWI? 'That was wrong. I wasn't drinking. Could have been the medicine.'

*Id.*, p. 16.

> People do despicable acts because of their own rationalization. Why does somebody sell marijuana? Really. Why? Multiple times. Why does he do it? Why does somebody drive while intoxicated? Why does somebody rob somebody? There's always a reason.

*Id.*, pp. 21–22.

> I submit to you that the defendant is guilty on this, and I ask you to go back and find him guilty and come back, and we'll hear the punishment phase. I think . . . that you already know about the defendant's criminal background, but before you do that, there's a couple things I want to go over on this, if we can do that.

*Id.*, p. 26. Petitioner asserts that the prosecutor's repeated references to these extraneous offenses constituted prosecutorial misconduct that denied him a fair trial.

Prosecutorial misconduct, in context of a habeas proceeding, requires a showing that the State's improper actions "so infected the [trial] with unfairness as to make the resulting [conviction] a denial of due process." *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000). Under this standard, the petitioner must show "that the [prosecutor's] misconduct [was] persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks." *Geiger v. Cain*, 540 F.3d 303, 308 (5th Cir. 2008); *Jones v. Butler*, 864 F.2d 348, 356 (5th Cir. 1988). To constitute a due process violation, the prosecutorial misconduct must be of "sufficient significance to

8

result in the denial of the defendant's right to a fair trial." *Greer v. Miller*, 483 U.S. 756, 765 (1987). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). "A trial is fundamentally unfair if there is a reasonable probability that the verdict might have been different had the trial been properly conducted." *Foy v. Donnelly*, 959 F.2d 1307, 1317 (5th Cir. 1992) (internal quotation marks omitted).

This particular issue of prosecutorial misconduct was not raised on direct appeal. On state collateral review, the trial court found that the complained-of extraneous offense evidence had been admissible because petitioner opened the door to its use:

> 5. 'When a party produces evidence tending to create a false impression of his law-abiding behavior, he opens the door on his otherwise irrelevant past criminal history, and opposing counsel may introduce evidence tending to rebut the false impression.' (Citations omitted.)
>
> 6. This rule is not limited to final convictions. (Citations omitted.)
>
> 7. By confronting Applicant with his prior criminal history, the prosecutor was simply trying to rebut the false impression created by Applicant as to his law-abiding nature. Because this is permitted under Texas law, Applicant is unable to prove his claim of prosecutorial misconduct.

*Ex parte Cervantes*, WR-69,310-02, pp. 411–12. The trial court did not hold that petitioner's failures to object subjected the alleged prosecutorial misconduct errors to procedural default under Texas's contemporary objection rule. *See, e.g., Barrientes*, 221 F.3d at 779. Rather, the trial court found there was no prosecutorial misconduct because petitioner's "false impression" evidence made the extraneous offense evidence admissible. Because this Court

9

has already determined that this latter finding is factually unreasonable, the Court will look to the record as a whole in addressing the issue.

As shown by the record excerpts set forth herein above, the trial court, properly or otherwise, overruled trial counsel's objection to the State's questioning petitioner about his pending D.W.I. charge; the trial court stated that, "It's cross-examination of the defendant. He may ask the question." R.R., Vol. 2, p. 187. While petitioner makes conclusory assertions that the prosecutor "knew" that his questions were improper and that he "took advantage" of petitioner's "incompetent" trial counsel, it was the trial judge who overruled petitioner's objection and allowed the State to cross-examine petitioner as to his extraneous offenses. The effect of this ruling then carried over into closing argument, as evidence admitted during trial may be referenced during closing argument. *See Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).

Because the trial court overruled petitioner's objection to the extraneous offense inquiry and allowed the State to pursue its line of questioning, petitioner does not establish "persistent and pronounced misconduct" by the prosecution under the record in this case. *See Geiger*, 540 F.3d at 308. Although the prosecution's *initial* question to petitioner regarding his probation may have been objectionable under Texas law, no objection was raised. When trial counsel did object to questions regarding petitioner's pending D.W.I. charge, the trial court overruled the objection and held it proper cross-examination of a testifying defendant. R.R., Vol. 2, p. 187.

Moreover, for the same basic factual reasons this Court found that petitioner was not prejudiced by trial counsel's failure to object timely or properly to the extraneous offense evidence (Docket Entry No. 26, p. 14), it finds here that any alleged misconduct by the prosecution did not rise to the level of a due process violation. That is, petitioner does not show that the evidence of his guilt was so insubstantial that, but for the remarks, no conviction would have occurred. *See Geiger*, 540 F.3d at 308. Petitioner argues that the improper impeachment evidence harmed his credibility and damaged his alibi defense that he was watching a movie with his girlfriend at the time of the aggravated robbery. However, petitioner was only one of three witnesses who presented alibi testimony. Petitioner's girlfriend testified that she was watching a movie with him during the time the offense would have been occurring. Another witness testified that petitioner had been with him until about 9:15 the evening of the offense, which left insufficient time for petitioner to have driven to the scene of the offense. The jury weighed this alibi testimony against the testimony of the four victims of the aggravated robbery, who testified that they knew petitioner and that he was the person who robbed them at gunpoint that evening. The evidence of petitioner's guilt was not "so insubstantial that the conviction would not have occurred but for the improper remarks." *See id.*

In short, the trial court overruled petitioner's objection during his cross-examination by the State, and held that it was proper cross-examination of a testifying defendant. In light

of the trial court's ruling and in absence of a successful objection by defense counsel, petitioner fails to establish that he was denied a fair trial due to prosecutorial misconduct.[1]

The Clerk of Court will forward this Supplemental Memorandum Opinion on Remand to the Clerk of the Fifth Circuit Court of Appeals.

Signed at Houston, Texas, on this the 5th day of December, 2011.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

---

[1] As the Court emphasized in its earlier memorandum opinion and order (Docket Entry No. 19, n.1), this decision is not to be construed as approving or condoning the Fort Bend County prosecutor's cross-examination tactics evinced in this record. To the contrary, the State conceded on direct appeal that the extraneous offense evidence was not admissible under state rules of evidence. However, a petitioner's burden of proof under the AEDPA standard of review is a heavy one, and this Court is constrained to conclude that petitioner here has not met that burden.